## Atlas Automobile Finance Corp. v. Greenberg et al.

*William Potter Davis, Jr.,* for plaintiff.

*Swartz, Campbell & Henry,* for intervening defendant.

WINNET, J., July 8, 1940.—This is an action in replevin to recover possession of a Ford truck which plaintiff claims under a bailment lease assigned to it by Mid-City Motor Sales Inc. in which Herbert Greenberg, defendant, is the lessee. The writ was served on defendant and on the garage owner where the truck was stored, and on October 28, 1937, no counter-bond having been filed, it was delivered by the sheriff to plaintiff. Subsequently, Universal Credit Company allegedly in possession of the truck intervened as a party defendant and claimed its title and right to possession.

The truck involved was sold by Ford Motor Company to Mid-City Motor Sales Inc., a dealer in motor vehicles, under a conditional sale contract dated December 1, 1936, and filed of record in the prothonotary's office on

December 9, 1936. The conditional sale contract was subsequently assigned to Universal Credit Company, the intervening defendant. The truck itself was left in the sales room of Mid-City Motor Sales Inc. under a "floor plan" arrangement which permits the dealer to sell the truck, with the understanding that the lien on the car is to be paid off from the proceeds of the sale.

Sometime in July of 1937 Mid-City Motor Sales Inc., the dealer, permitted defendant Herbert Greenberg to use this truck. He then decided to buy it and on August 31, 1937, it was sold to him through the usual mechanics of a bailment lease. Delivery and acceptance of the truck is acknowledged by both the parties to the lease agreement. The lease itself was the same day assigned to plaintiff, Atlas Automobile Finance Corporation, which paid the dealer $570. That very same day an application was made by the dealer for a certificate of title which was forwarded to Harrisburg to the Department of Revenue, in which application the dealer stated there was no incumbrance on the truck and requested a certificate to be issued to defendant, Herbert Greenberg, subject to an incumbrance in favor of Atlas Automobile Finance Corporation, plaintiff, in the sum of $728.46. Such a certificate was in fact issued. Greenberg who had been using the truck left it with the dealer, Mid-City Motor Sales Inc., for the purpose of changing the body.

The dealer deposited the moneys which it received from Atlas Automobile Finance Corporation in its own bank account and did not pay off the incumbrance in favor of Universal Credit Company.

On September 10, 1937, while the truck was in the possession of the dealer for the purpose of the body changes, a voluntary petition in bankruptcy was filed and an adjudication entered as of that date. Universal Credit Company promptly filed a petition for reclamation in the Federal court and obtained possession of this truck upon the filing of a bond. Subsequently, on November 16, 1937, an adjudication was entered on its petition and title to

the truck as well as to the motor vehicles which the dealer had in its possession under the "floor plan" was decreed in Universal Credit Company, intervening defendant. Plaintiff took no part in these proceedings, although it had knowledge of the bankruptcy of Mid-City Motor Sales Inc. and actually filed a petition to reclaim some other vehicles which it claimed, but not the truck involved in this suit.

Meanwhile, a default having occurred under the bailment lease of Greenberg, plaintiff brought this action of replevin and seized the truck while in the possession of Universal Credit Company, intervening defendant. It then applied for and obtained in its own name a certificate of title from the Department of Revenue.

Universal Credit Company contends: (1) That the sale to Greenberg, including the bailment lease, was fictitious and fraudulent in fact and also fraudulent in law, because there was no change of possession at the time of sale and bailment; (2) that the recorded conditional sales contract protected Universal's prior rights in the truck, and (3) that its title and right to possession was adjudicated by the Federal court, by which adjudication plaintiff was bound.

In judging the transaction between the parties I am mindful of the mandate of Mr. Justice Schaffer in Root v. Republic Acceptance Corp., 279 Pa. 55, 57, wherein he says:

"The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the

screen of paper titles to ascertain what was the real situation."

Looking at the reality of the transaction there was nothing out of the ordinary in it. It occurs in substance and in form hundreds of times daily throughout this city. The only thing out of the ordinary was the failure of Mid-City Motor Sales Inc., the dealer, to take the money, which it received through the sale of the truck and its financing, and pay off the lien of Universal Credit Company. No evidence was produced on which a finding could be made that the sale to Greenberg and the bailment lease were fictitious and fraudulent.

Nor is a finding of legal fraud justified by the facts. The pleadings admit that Greenberg, the purchaser, was in possession of the truck in July. He returned it to the dealer for the very purpose of buying it. He bought it and in the instrument which the parties executed they acknowledged delivery and acceptance of the truck. I must regard this as a sufficient delivery in law. Delivery does not consist in the mere transfer of location or custody of property. There must be in the mind of both parties concurring in the transfer in accordance with the contract, the intent of one to deliver and the other to receive: Jones v. Wands et al., 1 Pa. Superior Ct. 269. Greenberg then left the truck with the dealer for the purpose of making body changes.

I cannot arbitrarily disregard the statement in the contract and say that there was no delivery and acceptance; that the truck was not actually purchased by Greenberg; that the sale agreement was fictitious, particularly in view of the admission in the pleadings that Greenberg was in possession and using the truck even before the purchase.

Greenberg left the truck after its purchase with the dealer for the purpose of having body changes made. Defendant contends that, since the possession of Mid-City Motor Sales Inc. was not changed, no rights could be acquired by the purchaser, and cites in support Bower-

sox v. Weigle & Myers, 77 Pa. Superior Ct. 367, Sunbury Finance Co., Inc., v. Boyd Motor Co. et al., 119 Pa. Superior Ct. 412, and Commercial Banking Corp. v. Active Loan Co. of Phila., 135 Pa. Superior Ct. 124. The question of change of possession was material in those cases because the rights involved were those of creditors of the vendor and innocent purchasers. Defendant does not occupy this position. By no means was Universal Credit Company in any way deceived, even if the possession was continued. It did not extend credit by reason of the ostensible ownership of the various machines on the floor of Mid-City Motor Sales Inc. It should anticipate that some of the vehicles might be left with the dealer for the purpose of repairs or body changes.

Defendant was the intervening defendant in Sunbury Finance Co., Inc., v. Boyd Motor Car Co. et al., supra, and was successful, but an examination of the facts clearly shows that there were no innocent purchaser's rights which had intervened, such as Greenberg's in this case. The second finance company in that case had merely loaned money on the machine. Here, Greenberg was an innocent purchaser, and his rights were acquired by the present plaintiff in the ordinary course of business, and such rights should be protected by this court. Looking at the reality of the transaction, the good title which Greenberg acquired he passed on to plaintiff as security for the loan in reality made to him (it was his application for credit that was investigated) to enable him to purchase the truck.

It is significant that on the very day of the sale and the execution of the bailment lease, application was made for a certificate of title in the name of the purchaser, subject to the incumbrance of plaintiff. This distinctly was an act indicating change of ownership. The rule of Clow et al. v. Woods, 5 S. & R. 275, is that a sale of personal property, leaving the vendor in possession and without doing anything to indicate a change of owner-

ship, is fraudulent as against creditors. See also Bank of North America v. Penn Motor Car Co., 235 Pa. 194, 198.

We need not be concerned with the second contention of Universal that the conditional sales contract, duly recorded, protects Universal Credit Company's right as against plaintiff. In the brief filed on behalf of Universal Credit Company it is conceded "that recording under the Uniform Conditional Sales Act, would not have furnished the Universal Credit Company with protection as against an innocent purchaser for value without notice."

Greenberg was an innocent purchaser and through the ordinary financing arrangement Greenberg's rights were acquired by Atlas Automobile Finance Company, plaintiff. The entire plan of financing indicates that the dealer in this case, as in other cases, has the implied authority from the conditional vendor to resell the vehicle before the performance of the condition. The "floor plan" arrangement is a well known one. One of the witnesses referred to it as a "trust receipt on wholesale" plan. Vehicles are put on the floor of the dealer with reservation to the finance company. The finance company, however, knows that the purchaser deals with the dealer as if the machine were his outright. The dealer has permission so to act. The Conditional Sales Act of May 12, 1925, P. L. 603, 69 PS §406, particularly protects such purchaser by providing in section 9:

"When goods are delivered under a conditional sale contract *and the seller expressly or impliedly consents that the buyer may resell* them prior to performance of the condition, *the reservation of property shall be void against purchasers from the buyer for value in the ordinary course of business,* and as to them the buyer shall be deemed the owner of the goods even though the contract or a copy thereof shall be filed according to the provisions of this act." (Italics supplied.)

The decree of the Federal court on the reclamation proceedings filed by Universal Credit Company cannot ad-

judicate the rights of plaintiff herein. No law compels plaintiff to take part in those proceedings any more than defendant Universal Credit Company was compelled by law to add the Atlas Automobile Finance Company as an additional party for the purpose of adjudicating, in the Federal proceedings, this entire question. In those proceedings Universal Credit Company asserted a right of possession to automobiles as against the receiver and trustee in bankruptcy. And as against such receiver or trustee in bankruptcy there was a proper adjudication in favor of defendant Universal Credit Company. There was nothing in those proceedings that could adjudicate the rights of plaintiff herein. See Siegfried v. Boyd et al., 237 Pa. 55; 34 C. J. 966, 990.

Reviewing this transaction, it is doubtful whether defendant would have any complaint against it until the moment Mid-City Motor Sales Inc. deposited the money in its own account and did not immediately pay off the claim of Universal Credit Company. Up to that point, even if Universal Credit Company had an agent on the sales floor, it is unlikely it would have taken exception to a sale to Greenberg, who, not having sufficient money, immediately financed the balance necessary to complete the sale. The agent would hardly have taken exception to the application for title with the statement that there was no incumbrance because it was in the ordinary course of business, and he would have known that the application must be filled out in that manner in order that the financing might be completed and the necessary cash raised for the dealer to make the sale. Granted that both plaintiff and Universal Credit Company are innocent parties, it is defendant who must assume the responsibility for the perfidy of the dealer, Mid-City Motor Sales Inc., which it clothed with apparent ownership, for not turning over the money of the sale directly to defendant as it should have done in accordance with its agreement. See Commercial Motors Mortgage Corp. v. Waters, 280 Pa. 177, 179.

The court finds for plaintiff.